# EXHIBIT A



# DENISE M. KAMINSKI
## Geauga County Clerk of Courts

*Legal Office*  
100 Short Court Ste. 300  
Chardon, Ohio 44024

*Title Office*  
470 Center St. Bldg. 8  
Chardon, Ohio 44024

## COMMON PLEAS COURT GENERAL CASE DESIGNATION FORM

MICHAEL J. DUNLAP

Case no. _____

vs.

AMERICAN EDUCATION SERVICES

Judge: _____

**Has this case been previously filed and dismissed?** Check one: Yes ☐ No ☒
If yes, list case number, Judge and/or Magistrate. **Pending or closed related case(s) list case number and judge:**

_____  _____
Case No.                                  Judge/Magistrate

**TORT**
1310 ☐ MOTOR VEHICLE
1311 ☐ MEDICAL MALPRACTICE
1311 ☐ DENTAL MALPRACTICE
1311 ☐ OPTOMETRIC MALPRACTICE
1311 ☐ CHIROPRACTIC MALPRACTICE
1312 ☐ LEGAL MALPRACTICE
1313 ☐ OTHER MALPRACTICE
1314 ☐ CONSUMER RELIEF (O.R.C. 1345)
1330 ☐ PRODUCT LIABILITY
1350 ☐ MISCELLANEOUS

**CONTRACT**
1382 ☐ BUSINESS
1384 ☐ REAL ESTATE
1390 ☐ COGNOVIT
1391 ☐ OTHER_____

**MISCELLANEOUS**
1500 ☐ REPLEVIN
1501 ☒ OTHER Student Loan

**ADMINISTRATIVE APPEALS**
1540 ☐ EMPLOYMENT SERVICES
1550 ☐ WORKMEN'S COMPENSATION
1551 ☐ OTHER_____

I certify that to the best of my knowledge the within case is not related to any now pending or previously filed, except as noted.

MATT ROLF ATTORNEY LLC          MATTHEW W. ROLF
Firm Name                        Attorney of Record (Print or Type)

100 Center Street, #284, Chardon, Ohio 44024    _[signature]_
Address                          Signature

(440) 285-2222 • 834-1856 • 564-7131 • Legal Office ext. 1960, Direct (440) 279-1960 • Fax: (440) 286-2127
Title Office ext. 1750, Direct: (440) 279-1750 • Fax: (440) 286-1429
Email: dkaminski@co.geauga.oh.us

# GEAUGA COUNTY
# COURT OF COMMON PLEAS
## DENISE M. KAMINSKI, CLERK OF COURTS
## COURTHOUSE - 100 SHORT COURT – SUITE 300
## CHARDON, OH 44024

## SUMMONS

CERTIFIED MAIL
JUDGE CAROLYN J PASCHKE
CASE NUMBER: **19M000917**

PLAINTIFF(S):
MICHAEL J DUNLAP
12211 WOODIEBROOK ROAD
CHARDON, OH 44024

VS

DEFENDANT(S):
AMERICAN EDUCATION SERVICES
PO BOX 61047
HARRISBURG, PA 17106

TO THE ABOVE NAMED DEFENDANT:
    You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff(s) named herein.
    You are required to serve upon the plaintiff's attorney, or upon the plaintiff(s) if one has no attorney of record, a copy of your answer to the complaint within 28 days after said service of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three days after service on Plaintiff's Attorney.

The name and address of the plaintiff's attorney is as follows:

MATTHEW W ROLF
MATT ROLF ATTORNEY LLC
100 CENTER STREET SUITE 284
CHARDON, OH 44024

    If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

DENISE M KAMINSKI, CLERK OF COURT

*Chloe Porter*
_____
CHLOE PORTER, DEPUTY CLERK

Dated 11/15/2019

IN THE COURT OF COMMON PLEAS
GEAUGA COUNTY, OHIO

| | |
|---|---|
| MICHAEL J. DUNLAP<br>12211 Woodiebrook Road<br>Chardon, Ohio 44024<br>Plaintiff<br><br>vs.<br><br>AMERICAN EDUCATION SERVICES<br>P.O. Box 61047<br>Harrisburg, PA 17106-1047 | CASE NO.<br><br>JUDGE<br><br><br><br>COMPLAINT |

Now comes Plaintiff, Michael J. Dunlap, by and through undersigned counsel, and for his Complaint against Defendant, American Education Services, hereby states as follows:

1. Plaintiff is a natural person residing in Geauga County, Ohio.

2. In 2006 Plaintiff was a cosigner on a student loan, Account Number ▬▬▬▬ for the benefit of his daughter, Michaela M. Huellet, fka Michaela M. Dunlap, at that time a student. A copy of the signature page of the credit agreement is attached as Exhibit 1 to this Complaint.

3. The balance of the loan is currently in excess of twenty three thousand five hundred dollars ($23,500.00). See attached Exhibit 2.

4. Defendant is a loan servicing corporation doing business in and located in Harrisburg, Pennsylvania, United States of America.

5. Defendant is the owner, servicer and administrator of the loan referenced in Paragraph 2.

6. Michaela M. Huellet died on April 19, 2019. A copy of her certified death certificate is attached as Exhibit 3.

7. Defendant has engaged in collection actions against Plaintiff since the death of the borrower.

8. Venue is proper pursuant to Civ.R. 3(7).

## COUNT I

9. Plaintiff restates the foregoing allegations as if fully re-written herein.

10. Due to the death of the borrower, Defendant is obligated under 15 U.S.C.A. §1650 (g)(2) to release Plaintiff from any obligations as cosigner under the private education loan.

11. Defendant has failed to release Plaintiff from his obligations within a reasonable time.

12. Wherefore Plaintiff prays for this Court to issue judgment, declaratory or otherwise, releasing him from his obligations under the

aforementioned student loan, rescinding the balance of the loan, and awarding costs, interest, attorney fees, and any other relief this Court believes just and proper.

## COUNT II

13. Plaintiff restates the foregoing allegations as if fully re-written herein.

14. Plaintiff is entitled to relief under 15 U.S.C.A. §1640, including damages, twice the amount of the finance charge in connection with the transaction, rescission, reasonable attorney fees, and all finance charges and fees paid by Plaintiff.

15. Damages will be calculated more fully at the time of trial, but at this time are estimated to exceed twenty five thousand dollars ($25,000.00).

WHEREFORE, Plaintiff prays for judgment against Defendant for the full amount of Plaintiff's damages, including reasonable attorney fees, twice the amount of finance charge in the transaction, and all finance charges and fees paid by Plaintiff; and judgment declaratory or otherwise releasing Plaintiff from his obligations under the aforementioned student loan, and rescinding the balance of the

loan; together with all costs and expenses, and any other and further relief as the Court deems proper.

Respectfully Submitted,

Matthew Rolf (#0075116)
Attorney at Law
Matt Rolf Attorney LLC
100 Center Street, Suite 284
Chardon, OH 44024
T: (440) 286-9549 / F: (440) 226-8030
m-rolf@mattrolfattorneyllc.com



**American Education Services**
P.O. Box 2461 Harrisburg, PA 17105-2461
Toll-free 1-800-233-0557 • TTY: Dial 711
Fax 717-720-3916 • International 717-720-3100
www.aesSuccess.org

JUNE 27, 2019

```
#BWNDHKB
#B646 5838 4706 28L4#
MICHAEL J DUNLAP
12211 WOODIEBROOK RD
CHARDON OH  44024-9058
```

ACCT NUMBER: ■■■■■■

**THIS LETTER IS FOR YOUR INFORMATION ONLY.**

**WHY WE ARE CONTACTING YOU**
To provide you with the document(s) that you requested.

**EXHIBIT 1**

```
P621862:PS06OTSCGP
8385631059  8385631059 POMS         00000000000000000
```

56206 084761

| *Cosigned* | Loan Request/Credit Agreement – Signature Page |

NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

**LOAN PROGRAM INFORMATION**

Education One® Education One Undergraduate Loan    Academic Period: 08/2006-05/2007

Lender: JPMorgan Chase Bank, N.A.    School: NORTH IDAHO COLLEGE

Loan Amount Requested: $19958.00    Repayment Option: Full Deferral

Deferment Period Margin: 5.75    Repayment Period Margin: 5.75    Loan Origination Fee Percentage: 8.50

**STUDENT BORROWER INFORMATION** (Must be at least 18 years of age)

Borrower Name: Michaela M Dunlap    Home Address: ▓
Social Security #: ▓    Date of Birth: ▓    Home Telephone: ▓
Student Citizenship (check one box):
Note: Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: ▓    Reference Home Tel #: ▓    Work Tel #:
Reference Street Address: ▓
Reference City/State/Zip: ▓

**COSIGNER INFORMATION** (Must be at least 18 years of age)

Cosigner Name: Michael J Dunlap    Home Address: 1225 Frontier Drive Box 405  Seeley Lake, MT 59868
Social Security #: ▓3912    Date of Birth: ▓    Home Telephone: (406) 210-1442
Have you ever defaulted on a student loan or declared bankruptcy in the last 10 years?    ☒ No  ☐ Yes
Current Employer: PYRAMID MOUNTAIN LUMBER    Employer Telephone: (406) 677-2201
Current Position: Blue collar worker    Years There: 1 Years 2 Months
Years at Previous Employment: 10 Years 2 Months
Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.
If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box):    ☒ U.S. Citizen    ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note: Personal reference name and address cannot match that of the Borrower.
Personal Reference Name: Linda Leutner    Reference Home Tel #: ▓    Work Tel #:
Reference Street Address: ▓
Reference City/State/Zip: ▓

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement EO.06-07.CSX1.10DC.0106 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on this Credit Agreement and any related notices that require signature. If I choose to fax my signature on this Credit Agreement and any related notices that require signature, I intend (i) my fax signature to be an electronic signature under applicable federal and state law, (ii) any fax printout of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code. I, the Cosigner, have read the applicable cosigner notice(s).

For purposes of the following notices "you" means the Borrower and Cosigner, not the Lender.

FOR <u>ALABAMA RESIDENTS</u>: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.
FOR <u>WISCONSIN RESIDENTS</u>: NOTICE TO CUSTOMER:
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable) –
FAX TO: 800-704-9407

Signature of Borrower _Michaela M Dunlap_    Date 7-28-06

BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (I) APPLY FOR JOINT CREDIT AND (II) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner _Michael J Dunlap_    Date 8/7/06

EO.06-07.CSX1.10DC.0106    LENDER COPY
PN01_EO_06-07_CSX1_F_X_DUNLAP_A104087651.pdf    EOJUDP

In this Credit Agreement, the words "I", "me", "my", and "mine" mean each and every Borrower and Cosigner, individually and collectively, who signed this Credit Agreement. The words "you", "your", "yours", and "Lender" mean the Lender named at the top of the first page of this Credit Agreement, its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement. The "servicer" means the Lender or any entity it designates to service my loan.

**A. PROMISE TO PAY:** I promise to pay to your order, upon the terms and conditions of this Credit Agreement, the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) (together the "Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum, and other charges set forth herein.

**B. LOAN; DISCLOSURE STATEMENT:**

1. By signing this Credit Agreement, and submitting it to you, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. When you receive my signed Application, you are not agreeing to lend me money. You have the right not to make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me along with interest and all other amounts I owe (see Paragraph A).

2. If you agree to make a loan to me, you will mail me the disbursement check (the "Disbursement Check") and a statement disclosing certain information about the loan in accordance with the federal Truth-in-Lending Act (the "Disclosure Statement"). You have the right to disburse my Disbursement Check through an agent. At your option, you may also make any Disbursement Check co-payable to me and the Cosigner or to me and the School. In addition to other information, the Disclosure Statement will tell me the amount of my disbursement and the amount of the Loan Origination Fee. The Disclosure Statement is part of this Credit Agreement. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. My endorsement of the Disbursement Check or allowing the loan proceeds to be used by or on behalf of the student Borrower without objection will acknowledge receipt of the Disclosure Statement and my agreement to be legally bound by this Credit Agreement.

3. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice, together with my unused Disbursement Check or, if I have already endorsed and delivered the Disbursement Check to the School, a good check, payable to you, in the full amount of the Disbursement Check. In any event, I cannot cancel more than ten (10) days after I receive the Disclosure Statement. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.3, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date shown on any Disbursement Check you prepare for me (not the date I endorse or negotiate my check).

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Education One Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the date the student Borrower first graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date. For borrowers who chose the "Interest Only" or "Full Deferral" repayment options, a student who receives the first of joint or serial degrees (e.g., associates to bachelors) may continue in-school deferment while completing their second degree, up to the 5-year or 5½-year maximum.

(b) *Education One Graduate Professional Education Loan Program:* The Deferment End Date will be 180 days after the student Borrower graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the student Borrower begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends (or, if there is no Deferment Period, the day after the Disbursement Date for my loan). The Repayment Period is 20 years, unless monthly payments equal to the minimum monthly payment amount (see Paragraph E.2) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the Disbursement Date, interest on the outstanding balance of this Credit Agreement (including any unpaid interest later added to principal according to Paragraph D.3) will accrue each day (including holidays and other days you are closed) at the Variable Rate (Paragraph D.2) divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change monthly on the first day of each calendar month (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar month (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar month) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal* (Eastern Edition). The index for each calendar month (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar month) will equal the LIBOR rate published on the first business day of the immediately preceding calendar month, rounded to the nearest one-hundredth of one percent (0.01%). If *The Wall Street Journal* (Eastern Edition) is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period and you will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and as of the last day of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default (see Paragraph I) and the loan has been sold to TERI (see Paragraph L.12), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. In all cases, the sum of interest you capitalize plus the then-outstanding principal balance is thereafter considered the principal balance, and interest will accrue on the new principal balance.

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – The amount of my monthly payment ("Monthly Payment Amount") will be established based on the rules in this Credit Agreement when my Repayment Period begins. During the Repayment Period, you will send monthly statements that show the Monthly Payment Amount and the payment due dates, and I will pay the Monthly Payment Amount shown on my monthly statement, which amount will in no event be less than $25 or the unpaid balance, whichever is less. I understand that the Monthly Payment Amount is due each month. I may pay more than my Monthly Payment Amount at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments. You reserve the right to send monthly statements to the Borrower and/or the Cosigner. Even if I do not receive monthly statements, I will make consecutive monthly payments in amounts at least equal to the Monthly Payment Amount by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement.

3. Repayment Terms – My Monthly Payment Amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the Monthly Payment Amount would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of

which events is a new "Repayment Date"). As of any Repayment Date, my Monthly Payment Amount will be recalculated. My new Monthly Payment Amount will be disclosed to me by the servicer. The new Monthly Payment Amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.
4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional principal, interest, and/or late fees at the end of the Repayment Period. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full in a single payment.
5. Payments – Payments will be applied first to late fees and other fees and charges, then accrued interest, and the remainder to principal. If I have multiple loans processed by the servicer, and I submit a single payment that is not sufficient to pay all of the amounts I owe, such payment may be divided between or among the loans in accordance with applicable law and the servicer's customary procedures.
6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. I will pay only one late fee for any (monthly) payment, regardless of the number of days it is late. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.
F. LOAN ORIGINATION FEE: You may charge me an Origination Fee. If you charge me, at the time you issue any disbursement to me, or on my behalf, you may add the Origination Fee to my loan amount. The dollar amount of any Loan Origination Fee will be determined by multiplying the Principal Sum times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than on the entire Principal Sum (Loan Origination Fee plus the loan amount advanced). For example, a nominal Loan Origination Fee of 6.5% on the entire Principal Sum would equal 6.9519% of the loan amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and included with the Principal Sum. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.3), I will not be entitled to a refund of any Loan Origination Fee after my Disbursement Check has been negotiated.
G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty or charge.
H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement because of a hardship such as financial or medical difficulty, I may request that you modify these terms. I understand that such modification would be at your option, and, to the extent not prohibited by applicable law, you may charge me a fee equal to two percent 2% of the outstanding principal balance if you agree to modify the terms of this Credit Agreement. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any 2% fee described in the previous sentence and all interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.
I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors, or (5) I make any false written statement in applying for this loan or any other loan or at any time during the Deferment or Repayment Periods. I understand that if I default on my loan, disclosure of my loan information to consumer reporting agencies may adversely affect my credit rating. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. To the extent permitted by law, upon default, you will have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement are due and payable at once. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).
J. NOTICES:
1. I will send written notice to you, any subsequent holder of this Credit Agreement, and the servicer within ten days after any change in name, address, or enrollment status (for example, if the Borrower withdraws from the School or transfers to another school participating in this loan program).
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

K. INFORMATION:
1. I must update any and all information related to this Credit Agreement or my loan application whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).
3. CREDIT BUREAU REPORTING
You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults in my account may be reflected in my credit report.

I understand that the reporting of information about my account to credit bureaus may adversely affect my credit rating and my ability to obtain other credit. You may also provide the School with certain personally-identifiable information about me (such as my Social Security Number and my Loan ID number) and report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, to the School and others in accordance with applicable law.
L. ADDITIONAL AGREEMENTS:
1. I understand that you are located in OHIO and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.
2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner will not receive any of the loan proceeds.
3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.
4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.
5. The terms and conditions set forth in this Credit Agreement and the Disclosure Statement constitute the entire agreement between you and me.
6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.
7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement. If I fax my Credit Agreement, I have read and understand the prohibition regarding changes in Paragraph L.16.
8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. If I am in default at any time (including but not limited to a situation where I give an improper cancellation notice), you may exercise on my behalf any right that I may have to receive a full or partial refund of payments made to the School. I authorize the School to pay any or all of such amounts directly to you upon receipt of notice from you that I am in default under this Credit Agreement.
9. The Borrower and the Cosigner each agrees that any communication between you and the Borrower or the Cosigner will be binding on the Borrower and the Cosigner. The Borrower and Cosigner intend to be treated as principals of this Credit Agreement and not as sureties. To the extent the Borrower or the Cosigner may be treated as a surety, the Borrower and the Cosigner waive all notices otherwise required or available by law, and all suretyship defenses that might be available (including, without limitation, contribution, subrogation and exoneration). The Cosigner agrees that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on the Cosigner. It shall not be necessary for you to resort to or exhaust your remedies against the Borrower before calling upon the Cosigner to make repayment.
10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States dollars with no deduction for currency exchange.
11. The student Borrower's failure to complete the education program paid for with this loan will not relieve any Borrower of any obligation under this Credit Agreement.
12. I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc.

{W0504181.1}EO.06-07.CSX1.10DC.0106        3 of 4

("TERI"), a non-profit institution, or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement and I will refax the first page upon request by Lender. I may NOT amend the Credit Agreement by making changes to the Signature Page, which are then faxed to Lender. If the Borrower faxes the Signature Page, and the Lender approves the application, you and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

M. DISCLOSURE NOTICES

---

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you (the Borrower and the Cosigner):*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

---

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA and UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations. (For purposes of the following two notices, the word "you" refers to the Borrower and the Cosigner, not the Lender.)

IOWA RESIDENTS: If you are an Iowa resident and your amount financed is $25,000 or less, this is a consumer credit transaction.

IOWA, KANSAS and NEBRASKA RESIDENTS: (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender.) NOTICE TO CONSUMER: 1. Do not sign this Credit Agreement before you read it. 2. You are entitled to a copy of this Credit Agreement. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

MARYLAND RESIDENTS: In Paragraph L.1, Lender and I have agreed that this Credit Agreement is governed by federal law and the laws of OHIO, without regard to conflict of laws rules; if any court should nevertheless determine that this Credit Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, Lender and I agree and elect that this loan is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law.

MISSOURI RESIDENTS: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

NEVADA RESIDENTS: This is a loan for study.

NEW YORK, RHODE ISLAND, and VERMONT RESIDENTS: I understand and agree that you may obtain a consumer credit report in connection with updates, renewals of extensions of any credit as a result of this application. If I ask, I will be informed whether or not such a report was obtained and, if so, the name and address of the agency that furnished the report. I also understand and agree that you may obtain a consumer credit report in connection with the review or collection of any loan made to me as a result of this application or for other legitimate purposes related to such loans.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

OKLAHOMA RESIDENTS: If I am in default and only if the total amount disbursed under this Credit Agreement is greater than $3,600 (or any higher dollar amount established by law for the payment of such fees), I agree to pay the Lender's attorney's fees and court costs up to 15% of the unpaid debt.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 of the Wisconsin Statutes or court decree under Section 766.70 adversely affects your interest unless, prior to the time that the loan is approved, you are furnished with a copy of the marital property agreement, a statement or a decree or have actual knowledge of the adverse provision. If the loan for which I am applying is granted, I will notify you if I have a spouse who needs to receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

O. STATE-SPECIFIC COSIGNER NOTICES: For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the Lender.

FOR OBLIGORS COSIGNING IN VERMONT: For purposes of the following notice, the words "you" and "your" refer to any Cosigner, not to the Lender. "Credit Agreement" means this Credit Agreement.

*NOTICE TO COSIGNER:*
YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.



**American Education Services**
P.O. Box 2461 Harrisburg, PA 17105-2461
Toll-free 1-800-233-0557 • TTY: Dial 711
Fax 717-720-3916 • International 717-720-3100
www.aesSuccess.org

JUNE 04, 2019

scanned

#BWNDHKB
#B646 5838 4706 05L1#
MICHAEL J DUNLAP
12211 WOODIEBROOK RD
CHARDON OH 44024-9058

ACCT NUMBER: █████

### PLEASE READ THE FOLLOWING INFORMATION CAREFULLY

**WHY WE ARE CONTACTING YOU**
Our records indicate that you are a cosigner on a student loan for MICHAELA M DUNLAP serviced by our office. American Education Services (AES) recently received information indicating that the primary borrower is no longer able to fulfill the obligation to repay the loan in full. The impacted loan(s) is listed on the reverse side of this letter.

**WHAT THIS MEANS TO YOU**
The promissory note governing this loan(s) specifies that as the endorser or cosigner you are now the responsible party for the loan(s). You will begin receiving correspondence from our office about the loan(s), including monthly bills.

Please contact our office at the address or telephone number provided above if you have any questions.



EXHIBIT 2

P608120:PS07OCOBCR
8385631059  8385631059  MR          0000819155000 0595

## LOAN INFORMATION

| LOAN PROGRAM | 1ST DISB DATE | ORIGINAL BALANCE | CURRENT BALANCE |
|---|---|---|---|
| ALPLN | 08/16/2006 | $21,812.02 | $23,629.23 |



# STATE OF MONTANA
## CERTIFICATION OF VITAL RECORD



## LINCOLN COUNTY
### CERTIFICATION OF A DEATH CERTIFICATE

FILE #: 201927-003266

| | |
|---|---|
| FULL NAME OF DECEASED: | MICHAELA M HULETT |
| SEX: | Female |
| DATE OF DEATH: | April 19, 2019 |
| PLACE OF DEATH: | EUREKA |
| RACE: | White |
| DATE OF BIRTH: | March 14, 1987 |
| BIRTHPLACE: | Powell, Wyoming |
| MOTHER'S NAME: | Patti Bartlett |
| FATHER'S NAME: | Mike Dunlap |
| MARITAL STATUS: | Married |
| SPOUSE: | Tyrel Hulett |
| SOCIAL SECURITY NUMBER: | ███8110 |
| VETERAN OF ARMED FORCES: | No |
| RESIDENCE: | Columbia Falls, Montana |
| FUNERAL FACILITY: | Schnackenberg Funeral Home |
| PLACE OF DISPOSITION: | Schnackenberg Crematory, Libby, Montana |
| METHOD OF DISPOSITION: | Cremation |
| MANNER OF DEATH: | Accident |
| DATE FILED: | April 24, 2019 |

CAUSE OF DEATH:  ONSET:
a. blunt force injuries of the head  unknown

OTHER SIGNIFICANT CONDITIONS:
Not Recorded

DESCRIBE HOW INJURY OCCURRED:
single vehicle rollover

DATE AND TIME OF INJURY: April 19, 2019 20:35 Military

PLACE OF INJURY: Camping area

LOCATION OF INJURY: Swisher Access, Eureka, Montana 59917

NAME AND ADDRESS OF CERTIFIER:
Daniel M. Holskey, 512 California Ave, Libby, Montana 59923

DATE ISSUED: April 29, 2019   BY: *Maranda Davis, Deputy*

**EXHIBIT 3**

1063126

This certifies that this document is a true duplication of the original information on file with the Department of Public Health and Human Services.

*Robin A. Benson*
Clerk and Recorder

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE